*John S. McKiernan,* for defendant.

PROVIDENCE WINDOW CLEANING CO. *vs.* WILLIAM J. ROBIDOUX.

MARCH 18, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Capotosto, J. This is a petition by an employer under the workmen's compensation act, general laws 1938, chapter 300, to review a preliminary agreement duly approved by the director of labor. The petition alleges that the incapacity of the employee has ended or diminished. After a hearing in the superior court the trial justice found that the respondent was still totally incapacitated. Thereafter a decree was entered ordering the petitioner to pay the employee total disability compensation and medical expenses in accordance with the provisions of the act. The petitioner has appealed to this court from the entry of such decree.

The evidence shows that on January 2, 1953, while working for petitioner as a window cleaner, respondent fell some twenty feet from a ladder on the outside of a building. In addition to a general shaking up and multiple contusions he sustained a fracture of the lower end of the right tibia and a comminuted fracture of the left "os calcis." He was immediately brought to a hospital where he was attended

by Dr. Henry B. Fletcher, an orthopedic surgeon whose qualifications are unquestioned. Because of the extensive fragmentary nature of the fracture of the left foot as above indicated, Dr. Fletcher was compelled to resort to a fusion of the joints at that place. In the course of time the injury to respondent's right leg cleared up satisfactorily, but the one to the left foot resulted in the permanent loss of motion inward and outward of that member. The result was a noticeable limp in his gait and the inability to do work requiring much standing, climbing, bending, or lifting.

Later respondent was advised by Dr. Fletcher to seek work other than the kind above described. The petitioner thereupon offered him a job washing floors with a mop and waxing them with a hand-controlled, automatic machine. The respondent testified that he did not accept the offer of that job because it involved standing for long hours, the moving of heavy objects, and the uncertainty of his ability to control the movement of the waxing machines, most of them weighing eighty pounds or more, which would pull away from the operator upon striking a rough or damp place in a floor. He also testified that he did not try to do that work because of fear that petitioner might discharge him without just cause and thereby prejudice his status under the act. However, following the suggestion of his attorney and later upon the advice of his doctor he sought work suitable to his condition but none was available.

At the hearing in the superior court, upon renewal of petitioner's offer of employment, respondent testified he was willing to try to do such work if petitioner would be "responsible for anything that happens." At that time he was receiving diathermy treatments for low back pains which, according to Dr. Fletcher, were probably due to his abnormal gait and to inclement weather. Since respondent was nevertheless willing to attempt to do the work offered him, the trial justice continued the hearing for about six weeks when, upon presentation of evidence with reference to re-

spondent's ability or inability to do the work in question, he would decide whether his claim was "well founded."

When the hearing was resumed, testimony was presented by petitioner to the effect that respondent had quit the job of washing and waxing floors after working at it for four or five weeks. In explanation of his conduct, respondent in substance testified that he could not stand for more than a couple of hours without sitting down from time to time to relieve the pain in his heel; that nevertheless he continued to do the work until his left foot became swollen; that he then went to Dr. Fletcher, who, upon commencing a course of treatment for the swelling of the foot, told him to stop working until otherwise instructed; and that the doctor further advised him in the meanwhile to seek employment, preferably in a jewelry factory, where he could work sitting down. There was no testimony from the doctor in contradiction of the foregoing statements attributed to him. The respondent also testified that he applied at various places for work of the kind suggested by his physician but could find none.

At the end of the hearing the trial justice, in a decision from the bench, stated that "from the evidence that has been presented here I am satisfied that he [respondent] acted in reasonable good faith in attempting to go back to work," and that "up to the present moment he is totally disabled." The finding in the decree declaring that respondent continued to be totally disabled is the only matter set forth therein which is questioned by petitioner in this court.

The petitioner contends that the trial justice misconceived the evidence since it clearly appeared therefrom that the respondent was uncooperative; that, even though his foot was permanently injured, he was able to work at some remunerative occupation; and that therefore he was entitled only to an award of maximum partial compensation. This contention in effect asks us to pass upon the weight of the evidence and the credibility of the witnesses, which we have repeatedly held we may not do in this class of cases. It is

also well established that the decision of the trial justice will not be disturbed if it is supported by legal evidence, whether direct or by way of reasonable inference. In the circumstances disclosed by the present record we do not find that the trial justice misconceived the evidence or that there was no legal evidence to support his decision.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Waldman & Waldman, Morris S. Waldman,* for petitioner.

*John Quattrocchi, Jr.,* for respondent.